IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MISSOURI
ST. JOSEPH DIVISION

| | |
|---|---|
| J A BUTLER COMPANIES, INC. D/B/A PRIME PERFORMANCE NUTRITION, <br><br>Plaintiff,<br><br>v.<br><br>BRIAN W. OWENS D/B/A COMPLETE EQUINE PERFORMANCE,<br><br>Defendant. | CIVIL ACTION No. |

## COMPLAINT FOR TRADEMARK INFRINGEMENT

Plaintiff J A Butler Companies, Inc. d/b/a Prime Performance Nutrition ("Plaintiff" or "Prime Performance"), by and through its undersigned counsel, files this Complaint for trademark infringement, false designation of origin, and unfair competition against Defendant Brian W. Owens d/b/a Complete Equine Performance, and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action for trademark infringement under 15 U.S.C. § 1114, unfair competition and false designation of origin in violation of 15 U.S.C. § 1125(a), trademark infringement under Missouri state common law, and trademark dilution under Mo. Rev. Stat. § 417.061 *et seq*.

## THE PARTIES

2. Brian W. Owens ("Owens") has an address of P.O. Box 270, Muldrow, OK 74948. Upon information and belief, Owens is a citizen of Oklahoma, and operates a business in Muldrow Oklahoma under the name "Complete Equine Performance."

3. Complete Equine Performance (together with Owens "CEP" or "Defendant") has its principal place of business located at P.O. Box 270, Muldrow, OK 74948. The business of CEP is also associated with an address located at 474429 E 1120 Road, Muldrow, OK 74948.[1]

4. CEP operates through a network of distributors/agents, including Megan Treadway located at 8454 W. Wehmeyer Road, Rocheport, Missouri 65279 and Kari Lindhorst located at 308 Golden Valley Drive, St. Louis, MO, 63129.

## JURISDICTION AND VENUE

5. This action arises under 15 U.S.C. §§ 1114 and 1125(a) of the Lanham Act, 15 U.S.C. § 1051 *et seq.*, and Missouri state and common law.

6. The Court has federal subject matter jurisdiction over this action pursuant to the Lanham Act 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338.

7. This Court also has jurisdiction based on the diversity of the parties pursuant to 28 U.S.C. § 1332 as the matter in controversy exceeds $75,000, exclusive of interest and costs, and is between citizens of different states.

8. The Court has supplemental jurisdiction over the state common law claims because these claims form part of the same case and controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

9. This Court has personal jurisdiction over Defendant because:

    a. The causes of actions asserted herein arise out of and relate to the Defendant's purposeful contacts with the State of Missouri;

---

[1] Plaintiff's investigation failed to reveal that CEP is incorporated or is a trade name of a corporate entity. Instead, upon information and belief, Owens operates Complete Equine Performance as a trade name for his own business operated by him as an unincorporated sole proprietorship. To the extent that CEP is operated through a formal corporate entity, Plaintiff reserves the right to amend this Complaint to add any such corporate entity as a defendant.

b. Defendant has distributors in Missouri, regularly markets and promotes its business in Missouri, and otherwise has significant and continuous contacts with the State of Missouri;

c. Upon information and belief, Defendant has transacted business within the State of Missouri;

d. As alleged below, Defendant has committed the tortious act of trademark infringement within the State of Missouri;

e. Upon information and belief, Defendant's acts were uniquely aimed at Missouri and the brunt of the trademark infringement could be felt there. For example, depicted below are photographs of Defendant advertising and promoting its infringing products in Carthage, Missouri; and





f. Jurisdiction over Defendant comports with the United States Constitution and the Missouri Long Arm Statute, Mo. Rev. Stat. § 50-500 *et seq*.

10. Venue is proper in this Court pursuant to 28 U.S.C. 1391(b)(2) because CEP has committed the tortious activities of trademark infringement and unfair competition, and a substantial part of the events giving rise to these claims, within this District.

## FACTUAL BACKGROUND

### A. The RE-CHARGE Mark

11. Over the last 20 years, Plaintiff has built a reputation of providing high quality animal health supplements which provide animals with optimum nutrition so they can reach their maximum potential.

12. Plaintiff uses a research-based formulation with ingredient safety as a key factor, whereby ingredient combination allowances are maximized but do not exceed nominal requirements.

13. Raw materials used in the formulation process are independently certified and assayed for quality and purity.

14. Re-Charge is an example of Plaintiff's high-quality products ("Re-Charge"). It contains a combination of amino acids and other ingredients that are designed to support the performance of horses during and after competitions.

4

15. Plaintiff has enjoyed a high level of success selling Re-Charge within the equine-product marketplace.

16. Below is a depiction of Plaintiff's Re-Charge product bearing the RE-CHARGE Mark:



17. Plaintiff sells Re-Charge on its website located at the following domain: https://primeperformancenutrition.com/products/re-charge.

18. Plaintiff also markets and sells Re-Charge through a variety of other online and retail stores.

19. Plaintiff has continuously marketed and sold Re-Charge under its name "Re-Charge" (the "RE-CHARGE Mark") since at least as early as March 21, 2006.

20. As a result of Plaintiff's extensive sales and marketing efforts, the consuming public has come to know the RE-CHARGE Mark as identifying its quality Re-Charge products. This has resulted in wide-spread consumer recognition of the RE-CHARGE Mark.

21. Plaintiff has achieved common law trademark rights in the RE-CHARGE Mark.

22. Plaintiff has registered its RE-CHARGE Mark on the Principal Register of the United States Patent and Trademark Office ("USPTO"), U.S. Registration No. 6,924,012, for goods and services in International Classification 005 for "[e]quine products, namely dietary nutritional supplements; dietary and nutritional supplements to promote equine health."

23. Plaintiff filed its trademark application for the RE-CHARGE Mark on November 11, 2021, thus establishing nationwide priority as of that date.

24. Plaintiff's registration remains valid and subsisting. A true and correct copy of the registration is attached as **Exhibit A**.

25. An image of the RE-CHARGE Mark as depicted in the records of the USPTO is shown below:

**RE-CHARGE**

26. Plaintiff is the owner of the RE-CHARGE Mark and otherwise has full rights to use and enforce that mark.

27. Plaintiff's federal registration of the RE-CHARGE Mark provides it with a broad range of exclusive national rights for the name "Re-Charge" in connection with its Re-Charge products.

B. *Defendant's Infringement of the Re-Charge Mark and Acts of Unfair Competition*

28. Defendant is in the business of providing exercise and therapy treatments for horses, and also offers a line of "Equine Daily Supplements, Performance Supplements, and Pre/Post Race Paste," as described on its Website.

29. Despite Plaintiff's common law rights, federal trademark registration, and extensive use of the RE-CHARGE Mark for nearly 20 years, Defendant has recently begun offering a product similar to Plaintiff's Re-Charge product in connection with the identical RE-CHARGE Mark ("Infringing Product").

30. An example of the Infringing Product is depicted below:



31. Defendant maintains a website located at the following domain: https://completeequineperformance.com/complete-equine-performance/ (the "Website").

32. Defendant offers its Infringing Product on its Website under the banner "CEP RECHARGE MUSCLE RELAXER." *See* https://completeequineperformance.com/product/cep-recharge-muscle-relaxer/ (the "Infringing Product Website").

33. The Infringing Product Website clearly displays the RE-CHARGE Mark, which has the likelihood of causing significant consumer confusion.

34. The domain of the Infringing Product Website incorporates and uses the RE-CHARGE Mark, which directly infringes the RE-CHARGE Mark.

35. The Infringing Product Website domain ("Infringing Product Website Domain") is depicted below, which also clearly depicts the RE-CHARGE Mark:

🔒 completeequineperformance.com/product/cep-recharge-muscle-relaxer/

36. Upon information and belief, Defendant also uses the RE-CHARGE Mark as a Google AdWord to divert consumers looking for Plaintiff's Re-Charge product to the Infringing Product Website. For example, when one performs a search for the term "Equine Re-Charge," the Infringing Product Website is among the top search results. A search for "Recharge muscle

7

relaxer" generates the Infringing Product Website as the top search result. This gives rise to initial interest confusion.

37. Defendant also advertises the Infringing Website on its social media pages. An example Defendant's Facebook page is depicted below:



38. Owens has personally engaged in the sale of the Infringing Product. For example, the CEP Facebook post below describes Owens selling the Infringing Product:



39. Upon information and belief, Owens personally participated in the creation of the Infringing Product and/or its branding, actively markets and sells the Infringing Product, and otherwise actively uses the RE-CHARGE Mark in connection with the marketing, promotion and sale of the Infringing Product.

40. It appears Defendant's sole purpose for using the RE-CHARGE Mark in connection with its Infringing Product Website, the Infringing Website Domain, the social media

9

advertisements, and Defendants' other marketing and promotional activities, is to divert online customers who are attempting to find Plaintiff's legitimate RE-CHARGE product, and then confuse them into buying Defendant's Infringing Product.

41. Defendant also sells products through other means, including booths at events and other forms of marketing, sales and promotional activities. This includes sales through its network of distributors throughout the United States.

42. Because both Plaintiff and Defendant are selling similar products to the same market under the same name, there is a high likelihood of confusion.

43. Defendant's use of the RE-CHARGE Mark has violated and continues to violate Plaintiff's exclusive rights to the RE-CHARGE Mark.

44. The confusion caused by Defendant's actions aids in the promotion and sales of its own equine dietary supplement products.

45. Defendant's conduct began long after Plaintiff's adoption and first use of the RE-CHARGE Mark.

46. Defendant's use of the RE-CHARGE Mark violates Prime Performance's trademark rights.

47. Defendant had knowledge of the Plaintiff's ownership of the RE-CHARGE Mark prior to the actions alleged herein and adopted them in bad faith and with intent to cause confusion, tarnish, counterfeit and dilute the RE-CHARGE Mark.

48. Plaintiff had put Defendant on notice of its RE-CHARGE Mark. A true and correct copy of Plaintiff's notice to Defendant is attached hereto as **Exhibit B**. However, despite this notice, Defendant continues to use the RE-CHARGE Mark in violation of Plaintiff's trademark rights.

49. In committing these acts, Defendant has, among other things, willfully and in bad faith (1) infringed the RE-CHARGE Mark, (2) misled the consuming public into believing there is an association or connection between Defendant and Plaintiff and/or the products advertised and sold by Defendant and Plaintiff, (3) used false designations of origin on or in connection with its products, (4) wrongfully used the Infringing Product Website Domain to divert traffic to its Website, and (5) unfairly profited from such activities.

50. Unless enjoined, Defendant will continue to cause irreparable harm to Plaintiff.

## FIRST CLAIM FOR RELIEF
### Federal Trademark Infringement in Violation of 15 U.S.C. § 1114

51. Plaintiff repeats the allegations in the preceding paragraphs as though fully set forth herein.

52. Plaintiff's RE-CHARGE Mark is duly registered on the Principal Trademark Register of the United States Patent and Trademark Office.

53. The acts of Defendant complained of herein constitute infringement of Plaintiff's federally registered RE-CHARGE Mark in violation of 15 U.S.C. § 1114(1).

54. Defendant is and at the time of the actions complained of herein was actually aware that the RE-CHARGE Mark was that of Plaintiff. At the time of the filing of this Complaint, Defendant knew of the RE-CHARGE Mark and was specifically informed of this fact in writing.

55. Defendant did not obtain the consent or authorization of Plaintiff as the owner of the federally registered RE-CHARGE Mark to market and promote its products under the RE-CHARGE Mark or Infringing Product Website Domain which displays the RE-CHARGE Mark.

56. Defendant intentionally and knowingly used in commerce the RE-CHARGE Mark in connection with the offering, advertising, marketing, promotion, and sale of products similar to those provided by Plaintiff.

57. Defendant's egregious and intentional use of the RE-CHARGE Mark is likely to cause confusion, or to cause mistake, or to deceive, mislead, betray, and defraud consumers who believe that Defendant's products are those of Plaintiff.

58. Defendant's acts have been committed with knowledge of Plaintiff's exclusive right and goodwill in the RE-CHARGE Mark, as well as with bad faith and the intent to cause confusion or to cause mistake and to deceive.

59. Plaintiff has suffered and, unless stopped, will continue to suffer substantial and irreparable injury, loss, and damage to its rights in and to the RE-CHARGE Mark and the goodwill associated therewith, for which it has no adequate remedy at law.

60. Defendant's acts complained of herein have been deliberate, willful, intentional, or in bad faith, with full knowledge and conscious disregard of Plaintiff's rights in the RE-CHARGE Mark, and with intent to cause confusion and to trade on Plaintiff's vast goodwill in the RE-CHARGE Mark. In view of the egregious nature of Defendant's infringement, Plaintiff requests and is entitled to injunctive relief as provided by 15 U.S.C. § 1116 and damages pursuant to 15 U.S.C. § 1117, including Defendant's profits, treble damages, reasonable attorney fees, costs, statutory damages, and/or prejudgment interest.

**SECOND CLAIM FOR RELIEF**
**Unfair Competition and False Designation of Origin in Violation of Lanham Act Section 43(a), 15 U.S.C. § 1125(a)**

61. Plaintiff repeats the allegations in the preceding paragraphs as though fully set forth herein.

62. The acts of Defendant complained of herein constitute trademark infringement, false designation of origin, false or misleading descriptions or representations of fact, and unfair competition in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a).

63. Defendant has without authorization, and in connection with its products, used in commerce the RE-CHARGE Mark and the Infringing Product Website Domain, and/or has made false designations of origin which are likely to cause confusion or cause mistake or to deceive as to the affiliation, connection, or association of Defendant with Plaintiff, and/or as to origin, sponsorship or approval of Defendant's products or commercial activities.

64. Defendant's conduct has unfairly competed with and injured Plaintiff. Unless immediately restrained, Defendant will continue to injure Plaintiff, causing damage to Plaintiff in an amount to be determined at trial, and will cause irreparable injury to Plaintiff's goodwill and reputation associated with the value of the RE-CHARGE Mark.

65. Upon information and belief, the Defendant's conduct has been knowing, deliberate, willful, intended to cause confusion, or to cause mistake or to deceive and in blatant disregard of Plaintiff's rights.

66. Defendant knew, or by the exercise of reasonable care should have known, that their adoption and commencement of use in commerce and continuing use of the RE-CHARGE Mark would cause confusion, mistake, or deception by customers, and/or members of the consuming public.

67. Defendant's egregious and intentional use of the RE-CHARGE Mark and Infringing Product Website Domain in connection with the marketing and sales of its products is likely to cause confusion, mistake, or to deceive, mislead, betray, and defraud consumers into believing that the products of Defendant are actually those of Plaintiff.

68. Defendant's continuing and knowing use of the RE-CHARGE Mark constitutes false designation of origin and unfair competition in violation of Section 43(a) of the Lanham Act,

15 U.S.C. §1125(a), causing Plaintiff to suffer substantial and irreparable injury for which it has no adequate remedy at law.

69. Defendant's wrongful conduct has permitted it to make substantial sales and profits on the strength of Plaintiff's goodwill and marketing, advertising, and consumer recognition.

70. Based on Defendant's wrongful conduct, Plaintiff is entitled to injunctive relief as well as monetary damages, and other remedies as provided by the Lanham Act, including Defendants' profits, treble damages, reasonable attorney fees, costs, and prejudgment interest.

### THIRD CLAIM FOR RELIEF
**Common Law Trademark Infringement and Unfair Competition**

71. Plaintiff repeats the allegations in the preceding paragraphs as though fully set forth herein.

72. Plaintiff has a protectable interest in the RE-CHARGE Mark as it has used the RE-CHARGE Mark in commerce since 2006.

73. The Defendant continues to use the RE-CHARGE Mark in commerce.

74. The Defendant's use of the RE-CHARGE Mark is so similar to Plaintiff's Mark that it has caused, and will continue to cause, a likelihood of consumer confusion, cause mistake and/or deceive as to the affiliation, connection or association between Defendant and Plaintiff's RE-CHARGE Mark, and/or as to Plaintiff's sponsorship or approval of Defendant's goods, services and/or commercial activities.

75. Defendant's use of the RE-CHARGE Mark has caused, and unless enjoined, will continue to cause substantial injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's RE-CHARGE Mark. Therefore, Plaintiff is entitled to, and does, seek injunctive relief.

76. Accordingly, Defendants have committed common law trademark infringement and unfair competition.

**FOURTH CLAIM FOR RELIEF**
**Trademark Dilution in Violation of Mo. Rev. Stat. § 417.061** *et seq*.

77. Plaintiff repeats the allegations in the preceding paragraphs as though fully set forth herein.

78. Defendant's use of the RE-CHARGE Mark constitutes a violation of Mo. Rev. Stat. § 417.061 *et seq*.

79. Plaintiff's RE-CHARGE Mark is valid at common law.

80. The RE-CHARGE Mark is distinctive.

81. Defendant's use of the RE-CHARGE Mark and Infringing Product Website Domain in connection with the marketing, advertising, promoting and sale of its products is likely to dilute the distinctive quality of the RE-CHARGE Mark at least by eroding the public's identification of the RE-CHARGE Mark with Plaintiffs and by lessening the capacity of the Mark to identify and distinguish Plaintiff's goods and/or services.

82. Defendant's use of the RE-CHARGE Mark has caused, and unless enjoined, will continue to cause substantial injury to Plaintiff for which Plaintiff has no adequate remedy at law, including at least substantial and irreparable injury to the goodwill and reputation for quality associated with Plaintiff's RE-CHARGE Mark.

83. Upon information and belief, the Defendant's conduct has been knowing, deliberate, willful, and in bad faith.

84. Therefore, Plaintiff is entitled to, and does, seek injunctive relief to enjoin the manufacture, use, display, or sale of its Infringing Products and any other products that are likely to cause confusion to the RE-CHARGE Mark.

## JURY DEMAND

Plaintiff seeks a trial by jury on all matters so triable.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Prime Performance Nutrition prays for judgment against Defendant Complete Equine Performance as follows:

A. For an award of Defendant's profits and Plaintiff's damages in an amount to be proven at trial for trademark infringement under 15 U.S.C. §1114(a);

B. For an award of Defendants' profits and Plaintiff's damages in an amount to be proven at trial for false designation of origin and unfair competition under 15 U.S.C. §1125(a) and Mo. Rev. Stat. § 417.061;

C. For an accounting of Defendants' profits, and that the Court grant Plaintiff three times that amount in the Court's discretion;

D. In the alternative to actual damages and Defendants' profits, for statutory damages up to $2,000,000.00 per counterfeit mark per type of products provided or offered for sale as the court considers just, which election Plaintiff will make prior to the rendering of final judgment;

E. Injunctive relief provided for under Mo. Rev. Stat. § 417.061 *et. seq.*;

F. For injunctive relief from this Court prohibiting Defendant, its officers, agents, servants, employees, and attorneys, and other persons who are in active concert or participation with any of them from engaging or continuing to engage in the unlawful, unfair, or fraudulent business acts or practices described herein, including the advertising of products under the RE-CHARGE Mark, the unauthorized use of the RE-CHARGE Mark or any mark confusingly similar to that mark, the

Infringing Product Website and its Infringing Product Website Domain using the word "RE-CHARGE" or "Recharge," and any other act of trademark infringement, unfair competition or other act in derogation of Plaintiff's rights pursuant to 15 U.S.C. § 1116 and Mo. Rev. Stat. § 417.061;

G. For an order from the Court that an asset freeze or constructive trust be imposed over all monies and profits in Defendant's possession which rightfully belong to Plaintiff, and to cease the use of the Infringing Product Website domain;

H. For destruction of any infringing articles in Defendant's possession under 15 U.S.C. §1118 and Mo. Rev. Stat. § 417.061;

I. Defendant files with this Court and to serve upon Plaintiff, within thirty (30) days after the entry and service on Defendant of an injunction, a report in writing and under oath setting forth in detail the manner and form in which Defendant have complied with the injunction;

J. For an award of exemplary or punitive damages in an amount to be determined by the Court;

K. Finding this to be an exceptional case under 15 U.S.C. § 1117 and awarding Plaintiff its costs (including expert witness fees), disbursements, and reasonable attorney fees incurred in this action, and such other relief as may be appropriate;

L. Awarding Plaintiff pre-judgment interest and post-judgment interest as allowed by law; and

M. Granting such other and further relief as this Court may deem just and proper.

DATED this 1st day of June, 2023.

Respectfully submitted,

*/s/ Todd H. Bartels*
Todd H. Bartels, MO Bar # 45677
POLSINELLI PC
900 W. 48th Place, Suite 900
Kansas City, Missouri 64112
Telephone: (816) 572-4418
Facsimile: (816) 753-1536
Email: tbartels@polsinelli.com

Michael P. Dulin (*pro hac vice* forthcoming)
Clement Asante (*pro hac vice* forthcoming)
POLSINELLI PC
1401 Lawrence Street, Suite 2300
Denver, Colorado 80202
Telephone: (303) 572-9300
Facsimile: (303) 572-7883
Email: mdulin@polsinelli.com
    casante@polsinelli.com

**ATTORNEYS FOR DEFENDANT**